## MAXINE ROEDER *v.* STATE OF MARYLAND

[No. 322, September Term, 1967.]

---

706

*Decided August 14, 1968.*

The cause was submitted to MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Donald S. Hurwitz* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *James F. Garrity, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The appellant, Maxine Roeder, was tried in the Criminal Court of Baltimore by Judge Anselm Sodaro, sitting without

a jury, and was convicted of using unlawful means to cause and procure a miscarriage and abortion.

Appellant's sole contention raised on this appeal is that the trial court erred in finding guilt absent proof of an essential element in the indictment.

The evidence adduced at the trial revealed that the prosecuting witness believed herself pregnant when "I had skipped my period and I was sick in the morning and my body was swollen." As a result thereof, she visited a local bar and contacted another girl who, in turn, led her to the appellant. Subsequent thereto, the appellant and prosecuting witness met at the contact's apartment where the appellant directed her to remove her clothing and to lie on the bed. Asking if she would get sick, the prosecuting witness was assured that she would be "all right." The appellant then placed clamps upon and inserted tubes into the prosecuting witness' vagina, thereafter inserting a cold liquid. The process took some fifteen minutes. A small amount of blood was passed and she was told to "[g]o home; you'll be all right." Three hundred dollars was paid for the service the appellant rendered.

Two days later, the prosecuting witness aborted and started to hemorrhage, which continued for five days. Two days after aborting and the start of the hemorrhaging, she was admitted to the Greater Baltimore Medical Center.

The thrust of the appellant's argument is that the State failed to prove that the prosecuting witness was pregnant "beyond the reasonable doubt and to a moral certainty," at the time of the alleged crime, and absent this prerequisite element of proof, the conviction cannot stand.

As was so lucidly expressed by Chief Judge Alvey in his dissenting opinion in *Lamb v. State,* 67 Md. 524 at 537 (1887), quoting from *Mills v. Commonwealth,* 13 Pa. St. 631, 633:

> "It is a flagrant crime, at common law, to attempt to procure the miscarriage or abortion of a woman, because it interferes with and violates the mysteries of nature, in that process by which the human race is propagated and continued. It is a crime against nature, which obstructs the fountain of life, and therefore it is punished."

The original precursor of the controlling statute was initially construed in *Lamb v. State, supra.* That opinion by Judge Bryan observed in effect that the statute of 1868 by proscribing the enumerated activities at any period of her pregnancy changed the common law concept that since "the life of an infant was not supposed to begin until it stirred in the mother's womb, it was not regarded as a criminal offense to commit abortion in the early stages of pregnancy."

Except for very minor variance, the statute of 1868 is the same as the instant statute.

Article 27, § 3 of the Annotated Code of Maryland (1967 Repl. Vol.) states that:

> "Any person who shall knowingly advertise, print, publish, distribute or circulate, or knowingly cause to be advertised, printed, published, distributed or circulated, any pamphlet, printed paper, book, newspaper notice, advertisement or reference containing words or language giving or conveying any notice, hint or reference to any person, or to the name of any person, real or fictitious, from whom, or to any place, house, shop, or office, where any poison, drug, mixture, preparation, medicine or noxious thing, or any instrument or means whatever for the purpose of producing abortion, can be procured, or who shall knowingly sell, or cause to be sold any such poison, drug, mixture, preparation, medicine or noxious thing or instrument of any kind whatever; or from whom any advice, direction, information or knowledge may be obtained for the *purpose of causing the miscarriage or abortion of any woman pregnant with child, at any period of her pregnancy,* or shall knowingly sell or cause to be sold any medicine, *or who shall knowingly use or cause to be used any means whatsoever for that purpose,* shall be punished by imprisonment * * *" [Emphasis added].

As stated in 1 Maryland Law Encyclopedia at page 29:

> "* * * 'abortion' commonly describes an offense, carrying a meaning well established in jurisprudence.

> By the use of the word is meant that the life of the
> fetus or embryo shall be destroyed in the woman's
> womb, or that a premature birth thereof be caused be-
> fore it is capable of sustaining life."

The nature of the activity legally proscribed by the afore-
noted statute is clearly any specified effort knowingly directed
at the causation or procurement of a miscarriage or abortion
of any woman, pregnant with child at any period of her preg-
nancy, excluding that legally condoned exercise by a medical
practitioner.

The element of pregnancy is requisite to the successful prose-
cution of the crime charged and must be proved beyond a rea-
sonable doubt.

"Pregnancy of the victim may be established by circumstan-
tial evidence. Absolute certainty of pregnancy under a statute
making pregnancy an essential element in the offense is not ex-
act; all the law requires is such reasonable certainty as shall
silence all reasonable doubt." 1 C. J. S., *Abortion* § 34 at p.
388. The instant statute proscribes any of the enumerated acts
upon a pregnant woman "at any period of her pregnancy," thus
not limiting such proscription to any particular stage of the
pregnancy and thereby dispelling the oft stressed common law
prerequisite that the woman be "quick with child," meaning
having felt the child move within her. Therefore, pregnancy
and life are simultaneous with the act of conception and any,
actual or attempted, interruption with the natural life cycle
thereafter stands violative of the instant statute. See *Bonfield v.
Blackmore,* 90 N. J. Law 216, 100 Atl. 160, 161 (1917).

In *Tasco v. State,* 223 Md. 503, 165 A. 2d 456, 460 (1960),
the Court of Appeals, speaking through Judge Prescott (later
Chief Judge), stated at page 510-511:

> "Proof of guilt beyond *all* doubt has never been
> required, even in the most serious criminal cases.
> 'The trier of facts in a criminal case is enjoined by
> law to give due force to the presumption of innocence,
> and then to proceed cautiously in weighing the evi-
> dence; but he is not commanded to be naive and to
> believe without scrutiny every glib suggestion or far-

fetched fairy tale whether emanating from State or defense. An indispensable ingredient in judgment, in court as well as out of it, is a modicum of common sense.' *Berry v. State,* 202 Md. 62, 67, 95 A. 2d 319.

'To prove guilt beyond a reasonable doubt it is not necessary that every conceivable miraculous coincidence consistent with innocence be negatived.' *Hayette v. State,* 199 Md. 140, 144, 85 A. 2d 790."

See *Pettis v. State,* 2 Md. App. 651, 653, 236 A. 2d 429, 430 (1968); *Young v. State,* 4 Md App. 286, 299, 242 A. 2d 562, 569 (1968).

Here, the prosecuting witness testified as to her physical condition and symptoms, which were compatible with pregnancy and to her belief that she was pregnant. She was so secure in her belief that she sought out the appellant and endured the aforedescribed treatment. Her testimony further revealed that she aborted two days after appellant treated her. This testimony was sufficient to warrant the court's finding of pregnancy beyond a reasonable doubt. In addition thereto, the medical record, which was admitted below, revealed the "pathologically germane" information that:

"On 3/4/67 she was taken to the Operating Room where a D and C [1] for completion of septic abortion was performed, the pathology of which was returned as inflamed and necrotic placental fragments." [2]

The applicable test in reaching a determination of the sufficiency of the evidence in a non-jury case is whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. *Morris v. State,* 4 Md. App.

---

1. D and C—dilatation of the cervix and curettage (scraping) of the cavity of the uterus: used as a diagnostic and therapeutic procedure in obstetrics and gynecology. See Blackiston's New Gould Medical Dictionary, Second Edition.

2. Dead Cells—part of the organ situated on the wall of the uterus from which the embryo is attached; it is developed about the third month of gestation. See Blackiston's, supra.

328, 331, 242 A. 2d 582, 584 (1968) ; *Brown v. State,* 4 Md. App. 261, 268, 242 A. 2d 570, 574 (1968) ; *Montague v. State,* 3 Md. App. 66, 72, 237 A. 2d 816, 820 (1968).

Furthermore, in non-jury trials the weight of the evidence and the credibility of the witnesses rests within the determination of the trial judge. *Morris v. State, supra,* 331 ; *Brown v. State, supra,* 268-269 ; *McRae v. State,* 3 Md. App. 388, 393, 239 A. 2d 607, 610 (1968).

Presented the instant facts, it would unduly stretch our credulity to interpret the appellant's act of affixing clamps to and inserting tubing into the vagina of the prosecuting witness as being directed at any purpose other than that prohibited by the statute.

This Court cannot reverse a judgment of the lower court unless it is shown that there is no legally sufficient evidence or proper inference therefrom, from which that court could find the accused guilty beyond a reasonable doubt. *Morris v. State, supra,* 333 ; *Brown v. State, supra,* 269. Such a prerequisite showing was not established in this case and we cannot say that the lower court was clearly erroneous. Maryland Rule 1086 ; *Morris v. State, supra,* 334 ; *Brown v. State, supra,* 269.

*Judgment affirmed.*