## HAZEL CASH VIOS *v.* STATE OF MARYLAND

[No. 36, September Term, 1968.]

*Decided October 2, 1968.*

The cause was submitted to MURPHY, C.J., and ANDERSON, ORTH, and THOMPSON, JJ.

*Charlton T. Howard,* with whom was *Norman R. Stone, Jr.,* on the brief, for appellant.

*William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *David Eaton, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

202

Per Curiam.

The appellant was found guilty at a trial by the court in the Criminal Court of Baltimore of using unlawful means to cause an abortion and miscarriage as charged in two counts of an indictment returned against her.[1] She was sentenced to imprisonment for a term of three years and fined $1000 on each conviction, the sentences to run concurrently.

On appeal from the judgments the appellant contends that (I) the evidence was not sufficient to sustain the convictions in that there was no proper proof that the prosecutrix was pregnant and that (II) the court erred in accepting the identification of her by the prosecutrix and "abused its discretion in basing the conviction on the sole testimony of the prosecuting witness as against the testimony of the objective and noninterested defense witnesses."

I

The fact of pregnancy is an essential element of the offenses of which the appellant was convicted and must be proved beyond a reasonable doubt. *Roeder v. State*, 4 Md. App. 705. But we said in *Roeder*:

> " 'Pregnancy of the victim may be established by circumstantial evidence. Absolute certainty of pregnancy under a statute making pregnancy an essential element in the offense is not exact; all the law requires is such reasonable certainty as shall silence all reasonable doubt.' 1, C. J. S., *Abortion* § 34 at p. 388. The instant statute proscribes any of the enumerated acts upon a pregnant woman 'at any period of her

---

1. The appellant was convicted of offenses committed on 15 September 1967 proscribed by Md. Code (1967 Repl. Vol.) Art. 27, § 3. Chapter 470 of the Acts of 1968 repealed § 3. It also repealed and re-enacted with amendments § 145 of Art. 43 and added new §§ 149E, 149F and 149G to that Article under the subtitle "Practitioners of Medicine," subheading "Abortion." However by § 4 of Chapter 470 the Act did not take effect until 1 July 1968 and by § 3 of said Chapter "nothing in this Act applies to, or affects the prosecution or penalty for, any event or occurrence prior to its effective date."

pregnancy', thus not limiting such proscription to any particular stage of the pregnancy and thereby dispelling the oft stressed common law prerequisite that the woman be 'quick with child,' meaning having felt the child move within her. Therefore, pregnancy and life are simultaneous with the act of conception and any, actual or attempted, interruption with the natural life cycle thereafter stands violative of the instant statute."

In the instant case the prosecutrix testified, without objection, that she had sexual relations the beginning of July 1967. The latter part of July she "missed her period" and this caused her "to start worrying." She went to her family doctor early in August, who examined her and performed tests on her as a result of which she learned that she was pregnant. In September she contacted a woman who put her in touch with the appellant who inserted a long, thin piece of wood in her vagina. The appellant told her to take certain pills for six hours and that in about eight hours she would start bleeding. "After I started bleeding, that when it was heavy enough, that I could pull it out and just to go on from there." She told her to be as active as she possibly could, and "this would help it more." She started bleeding that night and the next evening about 7:00 P.M. "it came out * * *. It was a small baby, I guess is what you would call it, because it was perfectly formed * * * You could see it was a baby—it was perfectly formed— its hands, its feet, and everything you could see." She continued hemorrhaging and was in pain. She called her doctor the next day and was admitted to Union Memorial Hospital. The hospital record was received in evidence without objection. The diagnosis was septic abortion and the operative note showed that a "D and C" was performed on 18 September 1967.[2] We have no difficulty in determining that the evidence here

---

2. "Septic abortion" has been defined as termination of pregnancy before the term of viability resulting in infection. See Blackiston's New Gould Medical Dictionary, Second Edition, and Taber's Cyclopedic Medical Dictionary. "D and C" is a dialation of the cervix and curretlage of the cavity of the uterus, used as a diagnostic and therapeutic procedure in obstetrics and gynecology. See Blackiston's, *supra; Roeder v. State, supra,* note 1.

showed directly or, at the least, supported a rational inference beyond a reasonable doubt that the prosecutrix was pregnant at the time the means were used upon her to cause a miscarriage and abortion. The evidence being thus legally sufficient, the finding of the trial court thereon was not clearly erroneous. Md. Rules, 1086. The appellant urges on appeal that the hospital report was not properly admitted in evidence, but the point was not raised and decided below and is not properly before us. Md. Rules, 1085.

## II

In court, the prosecutrix made a positive identification of the appellant as the person who performed the abortion on her. The identification was made without objection. On cross-examination defense counsel elicited that she had been shown photographs of women by the police while she was in the hospital and from those photographs had picked out that of the appellant. She presumed that they were photographs of women who had been arrested on a charge of abortion in the past. She also said that she had been in the presence of the appellant for some 25 minutes on the day of the crime. It was urged below in argument for judgment of acquittal and it is urged on appeal that the photographic identification procedure tainted the in court identification. But as the identification at trial came into evidence without objection its admissibility cannot now be contested, Md. Rules, 1085, and the fact that the prosecutrix had previously identified a photograph of the appellant, which evidence was elicited by the appellant, goes only to the weight of the identification, a matter for the trier of facts, *Crosby v. State,* 2 Md. App. 578. The court was not obliged to believe the defense of alibi adduced by the defense, *Logan v. State,* 1 Md. App. 213, and the identification by the victim was enough to show the criminal agency of the appellant, *Gunther v. State,* 4 Md. App. 181. In any event we do not find from the record that the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States,* 390 U. S. 377, 88 Sup. Ct. 967, 19 L. Ed. 2d 1247 (1968). The prosecutrix had ample opportunity to observe the features of

the appellant when she was in her presence at the time of the crime. See *McRae v. State,* 3 Md. App. 388.

*Judgments affirmed; appellant to pay costs.*