MILAN M. VUITCH *v.* STATE OF
MARYLAND

[No. 32, September Term, 1970.]

*Decided November 24, 1970.*

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, THOMPSON, MOYLAN, and POW-
ERS, JJ.

*Joseph R. Nellis*, with whom were *Leonard T. Kardy*
and *M. William Adelson* on the brief, for appellant.

*Francis X. Pugh, Assistant Attorney General,* with
whom were *Francis B. Burch, Attorney General, Ed-*

ward F. Borgerding, Assistant Attorney General, William A. Linthicum, Jr., State's Attorney for Montgomery County, and Andrew L. Sonner, Assistant State's Attorney for Montgomery County, on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Maryland Code, Article 43, Sections 149E, F, and G contain the law of this State governing the commission of abortions. Section 149E provides, *inter alia,* that no person shall terminate a human pregnancy otherwise than by birth, with the exception that a physician licensed in Maryland may do so:

> "* * * in a hospital accredited by the joint commission for accreditation of hospitals and licensed by the State Board of Health and Mental Hygiene and if one or more of the following conditions exists:
>
> (1) Continuation of the pregnancy is likely to result in the death of the mother;
>
> (2) There is a substantial risk that continuation of the pregnancy would gravely impair the physical or mental health of the mother;
>
> (3) There is substantial risk of the birth of the child with grave and permanent physical deformity or mental retardation;
>
> (4) The pregnancy resulted from a rape committed as a result of force or bodily harm or threat of force or bodily harm and the State's Attorney of Baltimore City or the county in which the rape occurred has informed the hospital abortion review authority in writing over his signature that there is probable cause to believe that the alleged rape did occur."

Section 149E further provides that no physician shall

terminate a human pregnancy otherwise than by birth, unless all of the following additional conditions exist:

    (1) not more than twenty six weeks of gestation has passed, except in the case of pregnancy likely to result in the death of the mother, or where the fetus is dead, and

    (2) authorization therefor has been granted in writing by a hospital abortion review authority appointed by the hospital.

Section 149E provides that the hospital abortion review authority shall keep written records of all requests for authorization and its action thereon; and that hospitals file annual reports of therapeutic abortions performed therein, setting forth the number of requests, authorizations and performances, and the grounds upon which such authorizations were granted and the procedures employed to cause the abortions, the reports to be forwarded to the joint commission on accreditation of hospitals and the State Board of Health and Mental Hygiene "for the purpose of insuring that adequate and proper procedures are being followed in accredited hospitals."

Section 149F provides that no person or hospital shall be required to participate in terminating any human pregnancies. Section 149G provides that a person is guilty of a misdemeanor if he:

    "(1) Sells or gives, or causes to be sold or given, any drug, medicine, preparation, instrument, or device for the purpose of causing, inducing or obtaining a termination of human pregnancy other than by a licensed physician in a hospital accredited by the joint commission for accreditation of hospitals and licensed by the State Board of Health and Mental Hygiene; or

    (2) Gives advice, counsel, or information for the purpose of causing, inducing or obtaining a termination of human pregnancy

other than by such physician in such a
hospital; or

(3) Knowingly assists or causes by any means
whatsoever the obtaining or performing of
a termination of human pregnancy other
than by such physician in such a hospital."

Appellant Dr. Milan Vuitch, a physician licensed to
practice in Maryland, New York, Virginia, and the District of Columbia, was charged by criminal information
with having violated the Maryland abortion statute (Section 149G (a) (3)) in that he "unlawfully did knowingly
assist and cause the obtaining of and performing of a
termination of a human pregnancy of Rebekah Jayne
Dodson at 8204 Grubb Road, Chevy Chase, Montgomery
County, Maryland, a location which is not a hospital accredited by the joint commission for accreditation of hospitals and licensed by the State Board of Health and
Mental Hygiene * * *."

No objection to the criminal information, or motion to
dismiss it, was filed prior to trial under Maryland Rule
725b.[1] The case went to trial before a jury. After the
State had completed its case-in-chief, appellant filed a
written motion for a judgment of acquittal (Maryland
Rule 755) on the ground (a) that the State's evidence
was legally insufficient to support a guilty verdict, and
(b) that "Section 149G of Article 43 * * *, making it a
crime to terminate a human pregnancy, other than by a
licensed physician in a hospital accredited by the joint

---

1. "Defenses and objections based on defects in the institution
of the prosecution or in the indictment other than that it fails to
show jurisdiction in the court or to charge an offense, must be
raised by motion before trial. Such motion shall include all such
defenses and objections then available to the accused. Failure to
present any such defense or objection as herein provided shall constitute a waiver thereof, but the court for cause shown may grant
relief from the waiver. Lack of jurisdiction or the failure of the
indictment to charge an offense shall be noticed by the court at any
time during the proceeding. Any defense or objection capable of
determination without the trial of the general issue may be raised
before trial by motion."
   The Rule is, with one minor exception, identical to Federal Rule
of Criminal Procedure 12 (b) (2).

commission for accreditation of hospitals and licensed by the State Board of Health and Mental Hygiene which is the sole legal basis * * * [for the charge] is an unwarranted discrimination against this Defendant, a physician licensed by the State of Maryland, in favor of practitioners of medicine in accredited and licensed hospitals; the sweep of the statute is unnecessarily broad and invades the area of protected freedoms of both the pregnant woman and the Defendant, a licensed physician, in the private pursuit of their lives and duty, and is without compelling State interest sufficient to justify this encroachment upon personal liberty, and, consequently, Section 149G * * * is invalid and unconstitutional under the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, * * *." In support of his motion, appellant presented oral argument on the question of the legal sufficiency of the evidence to support a guilty verdict; he presented no argument whatsoever in support of his constitutional claims, and the court denied the motion without commenting thereon. Appellant then offered evidence in support of his defense that he did not commit an abortion on Miss Dodson, and by so doing he withdrew his motion. Rule 755b. At the end of the entire case, appellant orally renewed the motion, again without advancing any argument to support his constitutional claims, and again the court denied the motion without commenting thereon. The jury found Dr. Vuitch guilty and he was sentenced to pay a $5,000 fine and to imprisonment for three years, with a proviso for suspension of sentence and probation after serving one year.

## I

On appeal, Dr. Vuitch contends that "the conviction is void because of the facial unconstitutionality of Section 149G." More particularly, he claims that in requiring that pregnancies be terminated only in designated hospitals, Section 149G "is void for vagueness, uncontrolled delegation of legislative authority, and unjustifiable discrim-

ination with respect both to physicians and to their patients." He contends that Section 149G is constitutionally violative of the fundamental rights of the patient and her physician under the Fourteenth Amendment, in that it prohibits the free exchange of ideas by way of advice and treatment between physician and patient and their freedom and privacy of association; it prohibits physicians from practicing medicine according to the highest standards of medical practice and interferes with their personal freedom in the conduct of their profession; it interferes with the fundamental constitutional right of a woman to choose whether to bear children; and it constitutes an unreasonable and arbitrary discrimination between abortions on the one hand and all other types of surgery on the other.[2]

The State contends that the question of the alleged unconstitutionality of Section 149G is not properly before us because the motion for judgment of acquittal, through which appellant sought to raise the issue, permits us to consider only the legal sufficiency of the evidence to prove the crime alleged, and not the constitutionality of the statute under which the criminal information was filed. The State further contends that the constitutional question was waived in any event for failure of appellant to raise it prior to trial by motion to dismiss the criminal information under Maryland Rule 725b (see footnote 1).

Under Maryland Rule 755a the motion for judgment of acquittal supersedes and takes the place of the motion for a directed verdict of not guilty. Maryland Code, Article 27, Section 593, which implements the right of the trial judge under Section 5 of Article 15 of the Maryland Constitution to pass upon the sufficiency of the evidence (*see Giles v. State,* 229 Md. 370, and *Williams v. State,* 5 Md.

---

3. Appellant's constitutional arguments on appeal are considerably broader than the grounds asserted in the motion for judgment of acquittal, and they are enlarged upon and extended in an extremely able brief filed by *amici curiae*—organizations and individuals expressing a vital interest in the case, included among which are the Association for the Study of Abortion, Inc., and the Planned Parenthood Association of Maryland, Inc.

App. 450), expressly provides that the motion for judgment of acquittal is based "on the ground that the evidence is insufficient in law to justify * * * conviction * * *"; and that if the motion is denied, "the defendant may have a review of such ruling on appeal." [3] Without question, the office of the motion for judgment of acquittal is essentially limited to challenging the legal sufficiency of the evidence to support a guilty verdict; the motion seeks the obtention of a court-entered judgment of acquittal of the offense with which the accused stands charged. On appeal, when reviewing the refusal of the trial judge to grant the motion in a jury case, it is our *limited* function to determine whether the evidence shows directly or supports a rational inference of the facts to be proved, from which the jury could fairly be convinced, beyond a reasonable doubt, *of the defendant's guilt of the offense charged. Pressley v. State,* 244 Md. 664; *Williams v. State, supra.* In other words, as more particularly stated in *Devers and Webster v. State,* 9 Md. App. 366, 368:

> "When a motion for judgment of acquittal is made in a jury case it is the function of the lower court to determine whether or not the evidence before it is sufficient in law to sustain a conviction. If it determines that it is, it should deny the motion and submit the case to the jury; if it determines that it is not, it should grant the motion and the case does not reach the jury. It is the function of this Court when the question is properly before it, to determine whether the lower court erred in denying a motion for judgment of acquittal. The test to be applied is whether the evidence shows directly or supports a rational inference of the facts to be proved,

3. The constitutional provision reads:
"In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction."

from which the jury could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. If there was such evidence there would be no error in denial of the motion; if there was no such evidence, denial of the motion would be reversible error. * * *"

The motion for judgment of acquittal is not an appropriate vehicle to challenge the constitutionality, facial or otherwise, of the statute under which the criminal prosecution is initiated. Indeed, appellant's constitutional defense is not directed to a determination of his guilt of the offense charged; rather, it asserts, not as a matter of the sufficiency of evidence, but as a matter of constitutional law, that the State is without constitutional authority to criminally charge him with having terminated a human pregnancy outside of a licensed and accredited hospital. So viewed, we hold that the motion for judgment of acquittal was not the proper motion by which to test the constitutionality of the Maryland abortion statute. The law of other jurisdictions is in accord. *See Heartsill v. State*, 341 P. 2d 625 (Okla.); *State v. Perkins*, 92 A. 1 (Vt.); *Cohen v. State*, 65 S. E. 1096 (Ga.); 23-A C.J.S. *Criminal Law*, p. 361. *Cf. United States v. Weissman*, 266 U. S. 377.

In concluding that the constitutional questions now sought to be raised were not properly preserved for appellate review, we do not seek to delay the day when these important public issues must be squarely met and decided, either by us, or the Court of Appeals of Maryland. But it would be foolhardy in the extreme to undertake the resolution of such complex constitutional questions upon a record as procedurally and substantively deficient as that now before us—one in which the constitutional questions, though readily apparent prior to trial, were raised for the first time after the State had concluded its case-in-chief, and then only by an inappropriate motion (generally alleging unconstitutionality along a front far more

limited in thrust than that presently sought to be aired), submitted without comment, or illuminating argument. Whether the trial judge actually considered appellant's constitutional claims cannot be ascertained from the record since in denying the motion he made no comment thereon, and may well have concluded, quite properly, that the constitutional questions could not be raised at that juncture of the proceedings by motion for judgment of acquittal. Of course, nothing is better settled than the rule that a question as to the constitutionality of a statute will not be considered on appeal when not properly raised and decided by the lower court. *Luthardt v. State*, 6 Md. App. 251; *Iozzi v. State*, 5 Md. App. 415; *Woodell v. State*, 2 Md. App. 433.

We find no merit in appellant's suggestion that because the criminal information did not specify that he was a physician he could not raise the constitutional questions by pretrial motion under Rule 725b, but only by motion for judgment of acquittal, after evidence had been adduced at the trial to show that he was a medical doctor. We think it too obvious to require discussion that the question of the constitutionality of that section of the statute under which appellant was charged plainly implicated a "defense or objection" available to him prior to trial under Rule 755b which was "capable of determination without the trial of the general issue"; as such, it was a question appropriately raised by pretrial motion. And while we need not determine the question in this case, it would appear beyond any doubt that such a constitutional challenge would constitute a defense or objection under Rule 755b "based on defects in the institution of the prosecution or in the indictment other than that it fails to show jurisdiction in the court or to charge an offense"—a defense or objection which may be waived unless presented by motion before trial. *See Ward v. State*, 9 Md. App. 583; *Morrissey v. State*, 9 Md. App. 470; *Reagan v. State*, 4 Md. App. 590. While the failure of an indictment or information to charge an offense is clearly jurisdictional and is properly raised at any time, *Baker*

*v. State,* 6 Md. App. 148, the Maryland cases resolve the question whether an offense is charged by analyzing the allegations in the indictment in relation to the statute or law charging the offense. *See Putnam v. State,* 234 Md. 537; *Seidman v. State,* 230 Md. 305; *Johnson v. State,* 223 Md. 479; *Kellum v. State,* 223 Md. 80; *Kares v. State,* 215 Md. 396; *State v. Lassotovitch,* 162 Md. 147; *Ward v. State, supra; Morrissey v. State, supra.* If the indictment so properly charges the offense, a defense based on the ground that the statute under which the prosecution was brought is unconstitutional does not affect the jurisdiction of the court to try and decide the case. *See Medley v. Warden,* 214 Md. 625; *Superintendent v. Calman,* 203 Md. 414; *Loughran v. Warden,* 192 Md. 719. That the criminal information in this case properly charged all requisite elements of an unlawful abortion under Section 149G (a) (3) is undisputed; that the Circuit Court for Montgomery County was vested with jurisdiction in the sense of power and authority to try the case is likewise beyond question.

In *Lashley v. State,* 10 Md. App. 136, we reviewed cases from other jurisdictions involving the constitutionality of State abortion laws but because the appellant in *Lashley* lacked standing to challenge the constitutionality of the Maryland abortion law, we found it unnecessary to consider the matter on the merits. We did, however, conclude in that case that it was within the police power of the State to outlaw the commission of abortions that are not performed by qualified physicians. Whether it is within the police power of the State to require that physicians perform abortions only in accredited and licensed hospitals, or whether the State is otherwise empowered to circumscribe the commission of abortions by physicians as it has done under the present statute, involve mixed questions of fact and constitutional law, rather than merely facial issues of constitutionality. We believe such issues are most appropriately determined upon pretrial motion and on a record there to be made which would provide the relevant evidentiary background so essential to

place the constitutional questions in proper focus and perspective, and thus to assure a reasoned constitutional decision.[4] This is not to say that a physician charged with having committed an unlawful abortion under the statute may not, if he chooses, limit his attack to the facial constitutionality of the law, and produce no evidence; but if he does he will likely be met with the presumption which favors the constitutionality of duly enacted statutes and the rule that such statutes will not be declared unconstitutional unless they plainly contravene the federal or State constitutions, a reasonable doubt being enough to sustain constitutionality.[5] *Iozzi v. State, supra; Bacheller v. State,* 3 Md. App. 626; *Woodell v. State, supra.* Of course, the State is entitled to produce evidence on behalf of the validity of challenged legislation, *United States v. Carolene Products,* 304 U. S. 144; and, in this connection, we fully concur in the language in *Borden's Farm Products Co. v. Baldwin,* 293 U. S. 194, 213, that "it is inexpedient to determine grave constitutional questions upon a demurrer to a complaint or upon an equivalent motion, if there is a reasonable likelihood that the production of evidence will make the answer to the questions clearer."

As heretofore indicated, because of the failure of appellant to properly preserve the constitutional questions for appellate review, we do not reach them in this case.[6]

---

4. For example, while appellant has undertaken to attack as unconstitutional the alleged delegation of power to the Joint Commission on Accreditation of Hospitals, there is nothing in the record to show who or what that body is or what standards, if any, it follows in determining whether a particular hospital should be accredited.

5. The force of the presumption may well be tempered by the holding of the Supreme Court in *Bates v. City of Little Rock,* 361 U. S. 516, 524, that "Where there is a significant encroachment upon personal liberty, the State may prevail only upon showing a subordinating interest which is compelling."

6. In a written ruling denying appellant's motion for a new trial, the lower court said:

"The second contention of the Defendant is that the statute under which Defendant is charged is unconstitutional as being a denial of equal protection of the laws in accordance with the *Griswold* case (*Griswold v. Connecticut,*

To the extent that the constitutional question was considered on the motion for new trial, we do not deem the denial of the motion to be properly before us. *Pinkney v. State,* 9 Md. App. 283; *Johnson v. State,* 3 Md. App. 105.

## II

Contrary to appellant's further contention, we think there was evidence before the jury sufficient in law to sustain a conviction; hence, the trial judge did not err in denying appellant's motion for judgment of acquittal.

Evidence was adduced through the testimony of Miss Dodson showing that she had sexual intercourse on numerous occasions with Wayne Mills between August 5, 1968 and September 1, 1968; that her menstrual period did not occur on September 1, 1968, as expected; that in the latter part of September, and during October and November, she experienced morning sickness (which she described as an inability to eat and vomiting) ; and that she decided to have an abortion. As a result of a conversation with Mills, Miss Dodson called Dr. Vuitch and made an appointment with him for November 21, 1968; that on that date she went to his office where he had her disrobe and lie down for a physical examination, which included an examination of her vagina; that Dr. Vuitch told her she was "a little sick in the tummy" and that she should return on November 23 with $300.00; that at 3:00 p.m. on November 23 she did return to his office, at which time he gave her a shot in the thigh, placed her on the operating table, and proceeded to work on her vagina with instruments; that appellant left the room to answer a knock on the door and upon his return, told her that the person knocking was her boyfriend; that thereafter he gave her another shot, continued working, and after he said he was finished there was more knocking on the door; and that Dr. Vuitch told her that the police had arrived and she should tell them that she was there for

---

381 U. S. 479). The Court does not see that the instant case is comparable factually to *Griswold* and finds no denial here as charged."

treatment of an infection and otherwise was not to say anything. Miss Dodson was then taken by Mills to Holy Cross Hospital for an examination, where she remained until her discharge on November 25. She testified that after the operation performed upon her by the appellant her pelvic area became flat. Although she had not had a menstrual period from August 5 to November 23, she commenced vaginal bleeding after the operation was completed on the 23rd.

Wayne Mill's testimony confirmed Miss Dodson's statements as to the sexual intercourse between them and their conversation which resulted in the call being made to Dr. Vuitch for an appointment. Mills testified that Miss Dodson told him in September that she thought she was pregnant; that he took her to appellant's office on November 21, returned to pick her up, and drove her there again on November 23. After leaving Dr. Vuitch's office on November 23, Mills was stopped by several police officers. According to his testimony, he talked with them, as a result of which he returned alone to appellant's office, knocked on the door, and thereafter left without having been allowed inside. Mills returned to a police officer who was waiting nearby. Another police officer then "came back with papers" and in company with three police officers, Mills gained admittance to Dr. Vuitch's office.

Dr. Rosa Lee testified that she examined Miss Dodson in the emergency room of Holy Cross Hospital on the afternoon of November 23, 1968; that Dodson was having a miscarriage at that time; that she found slight to moderate bleeding during her pelvic examination of Dodson and also found the uterus somewhat enlarged and hard; that it was her opinion that the size and condition of the uterus were inconsistent with a three-month pregnancy; but that she was unable to form an opinion based upon her examination as to whether an instrument abortion had been performed on Miss Dodson. Dr. Lee testified that she recovered a small piece of placental tissue from Dodson's vagina which she characterized as the

aftermath of the product of conception. The tissue was sent to Dr. Robert McCullough, a pathologist.

Dr. McCullough testified that the tissue submitted to him by Dr. Lee was the product of conception derived from the foetus and the mother. He could express no opinion, however, as to the length of time that the tissue had been disconnected from a living source.

The hospital records were introduced in evidence. The final diagnosis contained therein showed that Miss Dodson had a "complete abortion."

Police Lieutenant Treadwell testified to his arrival at appellant's office on November 23 and that later on that day, at the hospital, he recovered $300.00 from Miss Dodson's possession.

It was stipulated that appellant's office was not a licensed and accredited hospital.

The case for the defense included testimony of Dr. Robert Levin that a week prior to trial he examined the previously mentioned placental tissue and thought it was more compatible with a spontaneous miscarriage than an instrumented abortion. He stated that the tissue was connected with a twelve-week pregnancy. He was unable to express an opinion whether Dodson had an instrumented termination of pregnancy.

Appellant, testifying on his own behalf, denied performing an abortion on Miss Dodson. He testified to his examination, diagnosis, and treatment of her for mild pelvic inflammatory disease, and that he conducted a test on her for pregnancy which was negative.

We think there was legally sufficient evidence before the jury showing directly or supporting a rational inference that appellant performed an instrumented abortion on Miss Dodson in his office on November 23. There was legally sufficient direct (as well as circumstantial) evidence of Dodson's pregnancy and of appellant's criminal agency in terminating it, and the case was properly submitted to the jury. See Vois v. State, 5 Md. App. 200; Roeder v. State, 4 Md. App. 705.

## III

Appellant urges that various rulings by the trial court regarding the admissibility of evidence were prejudicially erroneous and require reversal of the conviction.

### A.

Appellant contends that during the State's redirect examination of Miss Dodson the following question and answer revealed "damaging hearsay testimony":

> "Q. You testified on cross examination that you told Dr. Vuitch that it couldn't have been your boyfriend [who had knocked on the door of Dr. Vuitch's office on November 23]. Why did you tell him that?
>
> A. Because I was told that if Dr. Vuitch knew that the boyfriend was still around that he wouldn't have performed an abortion."

Appellant moved to strike the answer on the ground that it was not responsive to the question. The court, in denying the motion, stated that the answer was responsive.

The record discloses that the question was directed to further developing a line of inquiry initiated by appellant on cross-examination. The answer was responsive, and as this was the express basis of objection, we find no error in the trial court's refusal to strike it from the testimony. See *Wilt v. Wilt*, 242 Md. 129; *Metz v. State*, 9 Md. App. 15; *Bitzer v. State*, 4 Md. App. 415; Maryland Rule 522 d 2.

### B.

Appellant contends that the court erred when it permitted Mills, on his direct examination by the State, over objection, to give as his reason for taking Dodson to appellant's office on November 23 a hearsay statement of her possible motive for wanting to go there. Specifically, he objects to the following responses by Mills on the ground that they constitute a hearsay "furnishing [of] Dodson's reason for her appointment with the doctor":

"She thought she was pregnant and he was going to do something, I guess.

\* \* \*

The reason I took her there is cause she thought she was pregnant. I don't know whether she was or not, but she thought \* \* \*."

These responses, while clearly hearsay as to Dodson's reason for going to appellant's office, revealed Mills's purpose and motivation in driving her there. We think the trial judge should have given the jury an instruction limiting the testimony to its non-hearsay use; we do not, however, think his failure to do so, there being no request therefor, amounts to reversible error.

## C.

Appellant contends that the lower court committed prejudicial error when it permitted Dr. Lee to answer an improper hypothetical question by making factual assumptions not supported by evidence in the case.

The record discloses that the hypothetical question was directed toward obtaining Dr. Lee's expert opinion, based on the assumed facts, as to whether Dr. Vuitch "working on the vagina around three o'clock was involved in a procedure that could have caused the termination of a human pregnancy." The witness, after indicating that she could express an opinion based upon reasonable medical certainty, stated:

"A. If this patient was pregnant three months according to her period and if she was really pregnant until she stepped into the office and she came to our hospital directly from that office and I saw her—when I saw her she was not pregnant and when she walked into that office, if she was pregnant she was not pregnant when I saw her so it must have happened something in between.

Q. Thank you.

A. If she was really pregnant or not, I can-

not tell. If she was having a discharge at that time before she went to the doctor's office, that I cannot tell. She was pregnant and she was having a miscarriage, that was sure, because I saw the tissue and she was bleeding. Prior to that, I cannot tell."

We see no need to discuss the propriety of the hypothetical question since it is obvious that Dr. Lee's carefully guarded and qualified answer in no way prejudiced the appellant and without prejudice shown, an erroneous hypothetical question is not grounds for reversal. *Wolfinger v. Frey,* 223 Md. 184.

*Judgment affirmed; appellant to pay costs.*