JOSEPH LINDSEY CRANFORD *v.* STATE OF
MARYLAND

[No. 751A, September Term, 1976.]

\* \* \*

WILLIAM LEWIS WRIGHT *v.* STATE OF
MARYLAND

[No. 751B, September Term, 1976.]

*Decided June 9, 1977.*

The case was argued before and submitted on brief to THOMPSON, POWERS and MELVIN, JJ.

Argued by *Joseph A. DePaul* and *William C. Brennan, Jr.,* with whom were *DePaul, Willoner & Kendel, P.A.* on the brief, for appellant Cranford. Submitted by *Alan H. Murrell, Public Defender,* and *Michael R. Malloy, Assistant Public Defender,* for appellant Wright.

In No. 751A, argued by *Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County, Steven Kupferberg* and *Charles P. Strong, Assistant State's Attorney for Prince George's County,* on the brief, for appellee. In No. 751B, submitted by *Francis B. Burch, Attorney General, Arrie W. Davis, Assistant Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County, Steven Kupferberg* and *Charles P. Strong, Assistant State's Attorneys for Prince George's County,* for appellee.

MELVIN, J., delivered the opinion of the Court.

By the first count of an indictment filed 1 October 1975, the Grand Jury of Prince George's County charged the appellants, William Lewis Wright and Joseph Lindsey Cranford II, both age 25, with murdering Mary Ann Bunten, age 51, on or about 25 September 1975. The second count of the indictment charged Cranford with being an accessory after the fact to her murder, alleged in that second count to have been committed by Wright alone. After separate jury trials in the Circuit Court for Prince George's County, the appellants were each convicted of second degree murder under the first count of the indictment. Before the jury was sworn for the trial of Cranford (the first to be tried) and over Cranford's objection, the trial court granted the State's motion "to nol-pros" the second count.

Although tried separately and represented by different counsel, both appeals come to us in one record. We shall consider each appeal separately.

### *APPELLANT WRIGHT (CASE NO. 751 B)*

Wright presents a single question in his appeal: "Did the trial court commit plain error by instructing the jury about the standard for sufficiency of the evidence?"

At the close of all the evidence, appellant's motion for judgment of acquittal was denied. In the course of his advisory instructions to the jury, the trial judge said:

> "The test of sufficiency of the evidence has been established as being whether the evidence either shows directly or supports a rational inference of the facts to be proved from which you, the trier of the facts, could fairly be convinced beyond a reasonable doubt of the Defendant's guilt of the offense charged."

* * *

> "To be sufficient in law to justify a conviction, the admissible evidence adduced must show directly or circumstantially or support a rational inference of the facts to be proved from which you, the trier of the facts, could fairly be convinced beyond a reasonable doubt of the Defendant's guilt of the offense charged."

The appellant did not object to any of the court's instructions. He, nevertheless, argues that, pursuant to Maryland Rule 756 g, we should recognize the above-quoted portions as "plain error". Rule 756 g provides:

> "Upon appeal a party assigning error in the instructions may not assign as of right an error unless (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct was distinctly ob-

jected to before the jury retired to consider its verdict and (2) the grounds of objections were stated at that time. Ordinarily no other error will be considered by the Court of Appeals, but the Court of Appeals either of its own motion or upon the suggestion of a party may take cognizance of and correct any plain error in the instructions, material to the rights of the accused even though such error was not objected to as provided by section f of this Rule."

While the now-challenged portions of the instructions correctly state the substance of the legal test to be applied by a trial judge when ruling on a motion for a judgment of acquittal Code, Art. 27, § 593; *Williams and McClelland v. State*, 5 Md. App. 450, 247 A. 2d 731 (1968); *Vuitch v. State*, 10 Md. App. 389, 271 A. 2d 371 (1970), they have no place in instructions to the jury and should be avoided. If this were all the judge told the jury regarding the standard of proof necessary for conviction, we would unhesitatingly take cognizance of and correct the plain error by awarding a new trial even though no exceptions were taken below. To tell the jury that a conviction would be justified if they *"could* fairly be convinced beyond a reasonable doubt of the Defendant's guilt" is obviously not the proper standard for it to apply in determining guilt. A judgment of conviction premised on a finding *by the jurors* that they *could* be convinced of guilt beyond a reasonable doubt, however reasonable that possibility may be, could never be sustained.

As stated by the Court of Appeals in *State v. Grady*, 276 Md. 178, 345 A. 2d 436 (1975), "it is not always appropriate to quote from appellate decisions in jury instructions since the language employed in a particular opinion may not adequately inform jurors of their responsibility [citations omitted]". 276 Md. at 186. In this case, however, both before and after the offending portions of the instructions, the trial judge carefully and fully "inform[ed] the jurors of their responsibility" *not* to "convict the accused *unless,* after weighing all of the evidence, including the evidence of good character, *you are convinced beyond a reasonable doubt that*

*the Defendant was guilty of the crime charged*"; that the burden was upon the State *"to prove to your satisfaction beyond a reasonable doubt and to a moral certainty the guilt of an accused"*, that "[e]very accused is entitled to every inference in his favor which can reasonably be drawn from the evidence"; that "where there are two inferences which may be drawn from the same fact or set of facts, one consistent with guilt and one consistent with innocence, the accused is entitled to the inference consistent with innocence"; and that "[n]o greater degree of certainty is required when the evidence is circumstantial than when it is direct, for, in either case, *you, the trier of the facts, must be convinced beyond a reasonable doubt of the guilt of the accused"*.

Although we think it was technical error to include the now-challenged portions in the advisory instructions, when the instructions are viewed in their entirety, we do not think the error was so "plain" or "material to the rights of the accused" as to invoke the exercise of our discretion to correct it under Rule 756 g. *See, Dimery v. State*, 274 Md. 661, 338 A. 2d 56 (1975), *cert. denied*, 423 U. S. 1074 (1976); *Brown v. State*, 14 Md. App. 415, 287 A. 2d 62 (1972). *See, also, United States v. Brown*, 522 F. 2d 10 (9th Cir. 1975); *United States v. Christy*, 444 F. 2d 448 (6th Cir., 1971).

The judgment in case no. 751 B will be affirmed.

### *APPELLANT CRANFORD (CASE NO. 751 A)*

At the close of all the evidence, Cranford's motion for judgment of acquittal was denied. In this appeal, he contends that the ruling on the motion was in error. We disagree.

In reviewing the refusal of the trial judge to grant a motion for judgment of acquittal in a jury case, it is our limited function to determine whether the evidence shows directly or supports a rational inference of the facts to be proved, from which the jury could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. *Vuitch v. State*, 10 Md. App. 389, 271 A. 2d

371 (1970). In other words, we must review the relevant evidence and determine whether it is legally sufficient to sustain Cranford's conviction of second degree murder.

## The Evidence

At approximately 11:15 A. M. on 26 September 1975, the partially nude body of Mary Ann Bunten was found on the side of Church Road near Bowie, Maryland. The Assistant State Medical Examiner testified that the cause of death was a stab wound that had severed the left iliac artery in the area of the vagina and rectum, thus causing her to bleed to death "in a matter of minutes". There was also evidence that the alcohol content of the victim's body was .39%, ". . . and [that] one could possibly be comatose with this degree of alcohol".

As a result of information obtained from those who had seen Mrs. Bunten during the 24 hour period preceding the discovery of her dead body, Cranford and his brother-in-law, William Lewis Wright, were questioned by the police. Each gave written statements concerning their contacts with Mrs. Bunten. Cranford's statement was introduced in evidence by the State. Wright's statement was not offered by either party.

According to Cranford's statement and his testimony at trial, the following occurred during the evening of 24 September and the early morning hours of 25 September: Cranford and Wright began the evening by attending Cranford's young son's birthday party, where they drank several beers. After the party they went to a restaurant and had more beer. After purchasing a six pack of beer each, they left that restaurant and went to Wilson's Tavern in Cranford's car. As they arrived at Wilson's, at approximately 9:00 P. M., they noticed Mrs. Bunten walking up the roadway near the tavern parking lot. Wright approached her and began talking to her, while Cranford entered the tavern and began "socializing" and drinking more beer. Some minutes later Wright entered the tavern and asked Cranford for the keys to his car. Wright and Mrs.

Bunten then left in Cranford's car. Cranford remained inside the tavern "socializing" and drinking until approximately 1:30 A. M. when he went outside to wait for Wright to return with his car.

When Wright and Mrs. Bunten returned, Mrs. Bunten got in the back seat, Wright got in the front passenger seat, and Cranford got behind the wheel. Cranford asked Mrs. Bunten, whom he had never met before, where she lived. She mumbled an address and the three drove off to find her house. Before leaving the parking lot, however, Wright "reached between the two seats and took" Mrs. Bunten's slacks down. At that point she was "quite drunk and couldn't tell me where she lived. She mumbled an address". He was unable to find her house. After driving around for a short while, he stopped at the parking lot of a steak house where he joined Mrs. Bunten in the back seat and Wright drove the car. While Wright was driving, Cranford attempted to have sexual intercourse with Mrs. Bunten on the back seat but was unable to do so "because of my drunken condition" and because "she was very dry". During the attempt, he was on top of her for "fifteen minutes, probably", during which time she was "conscious" but "quite drunk" and said nothing, nor did Cranford or Wright say anything. Wright then stopped the car and said " 'Let's switch' or something to that effect". Cranford then drove the car while Wright was in the back seat with Mrs. Bunten. Cranford said he did not know "what was going on in the back seat", but he "assumed they were having intercourse". After "approximately 20 minutes", Cranford stopped the car at Wright's request. Wright got into the front passenger seat. At that point Cranford saw that Wright "had blood on his hand and he [Wright] said that the woman had a miscarriage" or "was having her period" and that "we had to let her off".

Cranford stopped the car in a dark and lonely area along Church Road. He assisted Wright in removing Mrs. Bunten from the car. At that point, according to Cranford, she was "unconscious" and Cranford could see by the dome light of the car that she was bloody and that there was a large amount of blood on the back seat of the car. Wright carried

Mrs. Bunten off to the side of the road and left her there. When Wright returned to the car, Wright drove the car to Wright's apartment, where, at Wright's request, Cranford disposed of Wright's bloody clothes.

In his testimony concerning the drunken condition of Mrs. Bunten, the Assistant Medical Examiner testified how a person with .39 per cent, by weight, of alcohol in his blood would act:

> "There would be stupor, there would be a marked decrease in responses to stimuli, and one could possibly be comatose with this degree of alcohol."

It is well settled that unlawful sexual intercourse with a female person without her consent constitutes the common-law felony of rape. It is also settled that unlawful sexual intercourse with a woman who is incapable of giving or withholding consent is rape. *See,* Perkins, *Criminal Law,* 2nd Ed., Ch. 2, § 5, at 163:

> "One of the leading American cases on the law of rape involved unlawful sexual intercourse with a woman 'so drunk as to be utterly senseless.' She had given no consent prior to her insensibility, but counsel urged that it was not 'against her will' because her will was quite inactive one way or the other, and the wording of the statute was 'by force and against her will.' The court pointed out that 'against her will' means 'without her consent,' so far as the law of rape is concerned, and that unlawful intercourse 'with a woman, without her consent, while she was, as he knew, wholly insensible so as to be incapable of consenting, and with such force as was necessary to accomplish the purpose was rape.' It is to be emphasized that this was not a case in which defendant had made the woman drunk but merely one in which he had taken advantage of her helpless condition. The court mentioned with approval the 'established rule in England that unlawful and forcible connection

with a woman in a state of unconsciousness at the time, whether that state has been produced by the act of the prisoner or not, is presumed to be without her consent, and is rape.' 'If it were otherwise,' the court added, 'any woman in a state of utter stupefaction, whether caused by drunkenness, sudden disease, the blow of a third person, or drugs which she had been persuaded to take even by the defendant himself, would be unprotected from personal dishonor. The law is not open to such a reproach.' In another case it was held that unlawful intercourse with a woman who had fainted was rape."

It is also well settled that the trier of fact is not obliged to accept as true Cranford's denial of any wrongdoing on his part. *Wilson v. State*, 261 Md. 551, 276 A. 2d 214 (1971); *Elder v. State*, 7 Md. App. 368, 255 A. 2d 91 (1969).

Viewing the evidence as a whole we think it permitted a reasonable inference that both Wright and Cranford were guilty of at least murder in the second degree. There can be no question that either Wright or Cranford struck the fatal blow. On the evidence the jury could permissibly conclude beyond a reasonable doubt that if Wright was the actual perpetrator of the murder, he committed the crime in the perpetration of or the attempt to perpetrate a rape, and was thus guilty of murder in the first degree under the felony-murder rule pursuant to Md. Code, Art. 27, § 410:

"All murder which shall be committed in the perpetration of, or attempt to perpetrate . . . any rape . . . shall be murder in the first degree."

The jury could have further found that Cranford, who was present and knew of the victim's condition and knew of Wright's unlawful purpose, and who combined with him in the accomplishment of that purpose by his aid and encouragement, was equally guilty of the resulting murder as a principal in the second degree. *See, Mumford v. State*, 19 Md. App. 640, 313 A. 2d 563 (1974).

We realize that Cranford was ultimately convicted of second degree murder and was acquitted of first degree murder. We also note that the State did not argue the felony-murder rule at the motion for judgment of acquittal as a reason for denying the motion. As the trial judge did not state his reasons on the record for denying the motion we do not know whether he considered the rule or not. In any event, in reviewing the propriety of a *denial* of a motion for judgment of acquittal on the broad grounds of insufficiency of the evidence, we do not feel that we are restricted to any particular reasons or arguments that may have been advanced by the State at the trial below or on appeal. The question raised and decided below was the sufficiency of the evidence. That is the legal question we now decide, without regard to and independently of any particular arguments or reasons advanced by the State, the appellant or the trial court. Unlike Rule 552, applicable in civil cases, Rule 755 does not require the moving party to state grounds or reasons for granting the motion (other than the broad ground of insufficient evidence), nor does Rule 755 require the State to set forth specifically its reasons why the motion should be denied. *See also*, Md. Code Art. 27, § 593.

Moreover, in the case *sub judice*, aside from the felony-murder rule, we think the evidence is such that the jury could have found that Cranford himself was the actual perpetrator of the murder and thus guilty as principal in the first degree of at least second degree murder. The evidence surely warranted a finding beyond a reasonable doubt that either Wright or Cranford struck the fatal blow. In his testimony, Cranford denied that he was the culprit. But as we have seen the trier of fact was not obliged to accept his denial. If the jury, who saw and heard him, concluded, as they had a right to do, that his denials were false, then *a fortiori*, under the circumstances, they could have reasonably concluded beyond a reasonable doubt that he and not Wright was the one who dealt the mortal wound.

After a careful review of all the evidence, we hold that the

trial judge correctly denied the motion for judgment of acquittal.

*Cranford's Other Contentions on Appeal*

1.

The appellant contends that the trial court erred by admitting photographs of the deceased depicting in detail her fatal wound. Admission of photographic evidence rests within the sound discretion of the trial court. *Clark v. State,* 238 Md. 11, 202 A. 2d 456 (1965); *Madison v. State,* 200 Md. 1, 87 A. 2d 593 (1952); *Corens v. State,* 185 Md. 561, 45 A. 2d 340 (1946); *See, Anno.* 73 A.L.R. 2d 769 (1960). We find no abuse of that discretion here.

2.

The appellant next contends that the jury instruction was "misleading" in several respects. We have carefully examined these contentions and find them to be without merit. The contentions now raised on appeal were either not preserved for our review, Md. Rules 756 g and 1085, or the points complained of were adequately covered by the trial judge in his advisory instructions.

3.

The appellant finally contends that it was error for the trial judge "to submit a charge of first degree murder to the jury". In view of our holding concerning the motion for judgment of acquittal, this contention is likewise without merit. We note also that the appellant made no objections to the trial court's advisory instructions concerning first degree murder or the possible verdicts that the jury could render, including a verdict of "guilty of murder in the first degree". Rules 756 g, 1085.

Having carefully considered all of the appellant's contentions raised in this appeal, we find no reversible error.

On the record before us, we think he received, if not a perfect trial, an eminently fair one — and in this imperfect world that is all he was entitled to receive.

> *Judgment in Case No. 751B affirmed; appellant Wright to pay the costs.*
>
> *Judgment in Case No. 751A affirmed; appellant Cranford to pay the costs.*