608 A.2d 782

Michael JACKSON

v.

STATE of Maryland.

Nos. 645 and 1037, Sept. Term, 1991.

Court of Special Appeals of Maryland.

July 1, 1992.

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Frank R. Weathersbee, State's Atty. for Anne Arundel County, Annapolis, on the brief), for appellee.

Submitted before WILNER, C.J., and BISHOP and WENNER, JJ.

BISHOP, Judge.

Michael James Jackson, the appellant, brings this consolidated appeal following his convictions in the Circuit Court for Anne Arundel County in two separate cases. In the first case, a jury convicted appellant of a first degree sexual offense, a second degree sexual offense, burglary, and assault with intent to rape. The court merged the conviction for the second degree sexual offense into the conviction for the first degree sexual offense and sentenced appellant to life imprisonment. It imposed a 15 year sentence, to run consecutively, for burglary and a 15 year sentence, to run concurrently with the burglary sentence, for assault with intent to rape. In the second case, the court convicted appellant, on an agreed statement of facts, of assault and

battery and breaking and entering. The court imposed sentences of five years for assault and battery and 18 months for breaking and entering, to run concurrently with each other but consecutively to the sentences in the previous case.

## Issues

Appellant presents five questions in this appeal. In the first case, he asks:

I.   "Did the trial court err in reversing its granting of a motion for judgment of acquittal on count ten charging assault with intent to rape?"

II.   "Did the trial court err in permitting [a police detective] to testify about statements made to him by [a witness for the defense]?"

III.   "Did the trial court err in allowing [the State's expert witness in forensic chemistry] to give an opinion on population genetics?"

IV.   "Did the trial court err in restricting [the testimony of an expert witness for the defense]?"; and

V.   In both cases, were erroneous rulings issued regarding DNA evidence?

We answer all five questions in the negative and affirm the judgments of the trial courts.

## Facts

The evidence disclosed that appellant's convictions in the first case stem from an attack upon the sister of appellant's former wife in the victim's home late one night, in February of 1988. The victim's husband was at work and she was alone with her two young children when appellant forced open the front door of the home and went straight to the victim's bedroom. There, he kicked the victim, beat her with his fists, and forced her to perform fellatio upon him. Appellant was not arrested until nearly a year and a half later. The victim was unable to identify appellant as her attacker, but her young son was able to do so. Moreover, expert testimony established that DNA samples taken from

semen found in the victim's hair and on her nightgown matched that of the appellant.

The attack that was the subject of the second trial occurred more than two years later, in May of 1990. According to the agreed statement of facts offered at appellant's court trial, a different victim, who lived in appellant's neighborhood, was opening her door early one morning to let her dog inside when a man burst through the door and punched her in the face. The victim was able to grab a pair of scissors, with which she stabbed the attacker in the face. The attacker then ran away. Three days later, appellant went to the police station to speak with officers regarding an unrelated matter. An officer noticed that appellant had several puncture wounds on his face. DNA samples taken from blood found in the victim's home matched appellant's DNA.

## Discussion

### I

### Motion for Judgment of Acquittal

■ At the close of the State's case in the first trial, defense counsel moved for judgment of acquittal as to each and every count. The only argument counsel presented, however, pertained to counts four, five, eight, and nine, which involved, respectively, assault and battery, assault, attempted first degree rape, and attempted second degree rape. Counsel contended, in essence, that because all four crimes were misdemeanors "not made punishable by confinement in the penitentiary by statute," they were each subject to the one year statute of limitations set forth in Md.Cts. & Jud.Proc.Code Ann. § 5–106(a). Counsel observed that charges had not been brought against appellant within one year of the incident and argued that, therefore, appellant was entitled to "judgment of acquittal."

The court took a brief recess to consider the argument. Upon its return, the court announced that it was granting the motion as to counts four, five, eight, nine, and *ten.*

When the State's attorney pointed out that defense counsel had not made a limitations argument as to count ten, and that the count involved assault with intent to rape, a statutory felony made punishable by statute with imprisonment, the court recanted its ruling as to that count. *See* Md.Ann. Code art. 27, § 12. At the close of all evidence, when defense counsel renewed his motion for judgment of acquittal, the court reiterated that it had earlier denied the motion as to count ten. The court explained that it had mistakenly believed that the count involved a misdemeanor subject to the one year statute of limitations, but that "I immediately recognized that it was not a misdemeanor but a separate statutory felony, and of course the State pointed it out to me and I corrected myself." The court admitted that it had not researched count ten during the recess and that it had included count ten within the misdemeanor category simply because of its title and position. The court added: "[T]here was no question in my mind that as to sufficiency of the evidence with regard to all the counts, including count 10, was adequate."

Appellant now argues that by changing its ruling on the "motion for judgment of acquittal" made at the close of the State's case, the court violated the prohibition against double jeopardy. In making this argument, appellant relies on *Pugh v. State,* 271 Md. 701, 319 A.2d 542 (1974). In *Pugh,* the trial judge announced a verdict of not guilty at the close of the case, only to change his mind moments thereafter and announce that the defendant was, in fact, guilty. The Court of Appeals reversed the conviction, explaining that the trial judge's actions were barred by double jeopardy principles. The Court explained: "From the earliest days, it has been clear that once a verdict of not guilty has been rendered at ... a criminal trial, that verdict is final and cannot be set aside[,]" regardless of "whether the acquittal was based on a mistake of law or a mistake of fact." *Id.* at 705, 319 A.2d 542; *State v. Shields,* 49 Md. 301, 333 (1878); *See Fong Foo v. United States,* 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962) (acquittal, although based

upon "egregiously erroneous foundation", is final); *Daff v. State,* 317 Md. 678, 683, 566 A.2d 120 (1989) (verdict of acquittal may not be reviewed without violating double jeopardy); *Brooks v. State,* 299 Md. 146, 154, 472 A.2d 981 (1984) (double jeopardy bars re-examination of granted motion for judgment of acquittal).

The fatal flaw in appellant's argument is that, despite the label applied by the trial court to its action, the court never actually granted judgment of acquittal as to count ten or any of the other counts. The court's action can more accurately be described as a dismissal of the counts. *See generally Smalis v. Pennsylvania,* 476 U.S. 140, 144 n. 5, 106 S.Ct. 1745, 1748 n. 5, 90 L.Ed.2d 116 (1986) (citing *United States v. Scott,* 437 U.S. 82, 96, 98 S.Ct. 2187, 2196, 57 L.Ed.2d 65 (1978) ("the trial judge's characterization of his own action cannot control the classification of the action") (quoting *United States v. Jorn,* 400 U.S. 470, 478 n. 7, 91 S.Ct. 547, 553 n. 7, 27 L.Ed.2d 543 (1971))). The dismissal was granted on a motion made on the ground that the court lacked jurisdiction because the statute of limitations had expired. In contrast, "a motion for judgment of acquittal on one or more counts, or on one or more degrees of an offense, may be made by an accused on the ground that the evidence is insufficient in law to justify his conviction as to any such count or degree." Md.Ann.Code art. 27, § 593. *See Robinson v. State,* 20 Md.App. 450, 452, 316 A.2d 268, *cert. denied,* 272 Md. 747 (1974) ("Art. 27, § 593 makes clear that a motion for judgment of acquittal is predicated upon the legal sufficiency of the evidence to convict"); *Smalis,* 476 U.S. at 142, 106 S.Ct. at 1747 (a judgment based upon the insufficiency of the evidence is an acquittal for purposes of the Double Jeopardy Clause); *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). The court *sub judice* removed any doubt of the sufficiency of evidence on all counts when it stated that the evidence was adequate with regard to count ten. *See Brooks,* 299 Md. at 150, 472 A.2d

981 (if any relevant evidence exists which is legally sufficient to sustain conviction, the judge must deny motion for judgment of acquittal).

A motion for judgment of acquittal is an inappropriate vehicle for challenging counts on any ground other than "the legal sufficiency of the evidence to support a guilty verdict[.]" *Vuitch v. State,* 10 Md.App. 389, 396, 271 A.2d 371 (1970), *cert. denied,* 261 Md. 729, *cert. denied,* 404 U.S. 868, 92 S.Ct. 44, 30 L.Ed.2d 112 (1971) (where a defendant improperly attempted via a motion for judgment of acquittal to challenge the constitutionality of the statute under which the charges against him were brought). An acquittal is deemed final if a court already has jurisdiction to hear the evidence. *See Block v. State,* 286 Md. 266, 270, 407 A.2d 320 (1979) (acquittal proceedings are "final 'except for the purpose of ascertaining whether the ... court had jurisdiction of the person and subject matter' "). The defendant's motion was based upon inadequate jurisdiction. The erroneous action of the court may more properly be classified a dismissal for lack of jurisdiction as opposed to an acquittal on the grounds of insufficiency of evidence. The motion itself was inherently inconsistent. It requested a "Judgment of acquittal" on the lack of jurisdiction, an improper ground for the granting of an acquittal.

Double jeopardy principles simply are not offended when the State is permitted to pursue a charge that has previously been terminated on the defendant's own motion unless the termination amounted to an actual acquittal. In *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), a case involving 18 U.S.C. 3731, which allows the Government to appeal except in cases where double jeopardy is implicated, the Court held that double jeopardy principles were not implicated where the prosecution appealed the lower court's dismissal of counts against the defendant due to pretrial delay, even though the lower court mischaracterized the dismissal as a judgment of acquittal. "[A] defendant is acquitted only when 'the ruling

of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.' " *Id.* at 97, 98 S.Ct. at 2197 (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977)); *Smalis*, 476 U.S. at 144, 106 S.Ct. at 1748 (ruling on insufficiency of evidence is an acquittal under the Double Jeopardy Clause because it resolves some or all of the factual elements of the offense charged). The *Scott* court reasoned that a dismissal not based upon guilt or innocence results in a defendant being neither acquitted nor convicted. Therefore, similar to a defendant's valued right to have his or her trial completed by a particular tribunal, the public has a valued right to "one complete opportunity to convict those who have violated its laws." *Scott*, 437 U.S. at 98–100, 98 S.Ct. at 2197–2198 (citing *Arizona v. Washington*, 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978)); *See Montana v. Hall*, 481 U.S. 400, 402–403, 107 S.Ct. 1825, 1826, 95 L.Ed.2d 354 (1987) (citing *United States v. Tateo*, 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964)) (corresponding to an accused person's right to a fair trial is societal interest in punishing the guilty); *Jorn*, 400 U.S. at 480, 91 S.Ct. at 554–555. The *Scott* Court adds that allowing appeals from mid-trial dismissals would advance public interest in assuring defendants are subject to just judgment on the merits of a case without the increased possibility of the innocent being found guilty, *See Green v. United States*, 355 U.S. 184, 188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957) (retrial after an acquittal increases the risk of the Government, and its extensive resources, wearing down the defenses of an innocent person), because the defendant has not yet argued his or her case on the merits. In *Scott*, the Court further stated:

> We think that ... the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cogniza-

ble under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant.

*Scott,* 437 U.S. at 98–99, 98 S.Ct. at 2198. Also, a defendant who, instead of obtaining a reversal on appeal, has the proceedings against him terminated by the trial court without any finding on his innocence or guilt

has not been "deprived" of his valued right to go to the first jury; only the public has been deprived of its valued right to "one complete opportunity to convict those who have violated its laws." No interest protected by the Double Jeopardy Clause is invaded when the Government is allowed to appeal and seek reversal of such a midtrial termination of the proceedings in a manner favorable to the defendant.

*Id.* at 100, 98 S.Ct. at 2198 (citations and footnote omitted).

Appellant does not—and, indeed, on this record cannot—contend that the trial court's ruling in any way represented a resolution of factual issues in his favor. He simply was never acquitted of the crime charged in count ten because the court's "acquittal" was not an intentionally rendered verdict based upon a conclusion drawn based on the merits of the case. The trial judge explicitly stated that there was no doubt, in his mind, that the evidence was sufficient to convict under count ten. The inclusion of count ten within the misdemeanor category was in the nature of a "slip of the tongue," as the court itself admitted. The court's own admission of this slip removes any need for assumptions as to the intention of the court. *See State v. Sayre,* 314 Md. 559, 564, 552 A.2d 553 (1989) (It is not easy to distinguish between an inadvertent slip of the tongue and a true change of mind without reading the mind of the judge.) *Pugh* distinguishes such a slip of the tongue as beyond the realm of an intentional rendering of a verdict required for Double Jeopardy Clause purposes. *Pugh,* 271 Md. at 706–707, 319 A.2d 542; *See Brooks,* 299 Md. at 155, 472 A.2d 981 (acquittal on insufficiency of the evidence is an intended decision as opposed to an inadvertent slip of the tongue).

The trial court's withdrawal of the ruling, therefore, did not subject appellant to double jeopardy.

## II

### Impeachment of Witness

Appellant next complains that the trial court in the first case erroneously permitted the State to impeach a defense witness by introducing extrinsic evidence of a prior inconsistent statement. The witness, who socialized with appellant on the evening before the attack upon the sister of appellant's former wife, testified regarding the events of that evening. He told the court, among other things, that he, appellant, and another man, Vinnie Bales, went to a neighborhood tavern where appellant and Bales got into a fist fight with each other. Later, in the rebuttal portion of the case, the State recalled a police officer to the stand. Over defense counsel's objection, the officer told the court that he had interviewed the witness more than one year after the attack. Although the witness had then reported that Bales had gotten into a fight at the tavern, he had not mentioned appellant's involvement in the fight.

As a general rule,

the credit to be given a witness may be impeached by showing that he has made statements which contradict his testimony in respect to material facts (but not in respect to facts which are collateral, irrelevant, or immaterial), provided a proper foundation has been laid.... The foundation is laid by interrogating the witness as to when, the place at which, and the person to whom such contradictory statements were made. This is but fair and just in order that the witness may be enabled to refresh his recollection in regard to such statements, and be afforded the opportunity of making such explanation as he may deem necessary and proper.... If the witness denies making the designated statement or asserts that he does not remember whether he made it, the foundation contemplated by the general rule for the introduction of the statement has been satisfied....

*State v. Kidd,* 281 Md. 32, 46 n. 8, 375 A.2d 1105, *cert. denied,* 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977) (citations omitted). Appellant does not contend that the impeachment related to "collateral, irrelevant, or immaterial" facts. *Id.* He contends only that the State failed to cross-examine the witness as to when and where the prior inconsistent statement was made, and that, as a result, the witness "had no frame of reference for remembering or denying having made such [a] statement[ ]."

A review of the record reveals that the witness was, in fact, thoroughly cross-examined regarding the prior inconsistent statement before the officer was recalled to the stand. The State's attorney first asked the witness: "Did there come a time when you talked to, let's be very specific, Detective Bailey about what you did that night?" The witness responded: "Yeah, ... he came to my house.... I think it was Detective Bailey. I couldn't really say." The State's attorney further indicated, and the witness agreed, that the conversation with Detective Bailey occurred approximately one year after the attack. Finally, the State's attorney asked: "Do you remember telling Detective Bailey anything about there being any kind of disagreement or a fight between Mr. Jackson and Mr. Bales?" The witness answered: "I'm not really sure whether I told Mr. Bailey about any disagreements between them two."

"[T]here is no unvarying formula or ritual required for the establishment of a foundation to impeach." *Bane v. State,* 73 Md.App. 135, 155, 533 A.2d 309 (1987) (quoting *Devan v. State,* 17 Md.App. 182, 193, 300 A.2d 705, *cert. denied,* 268 Md. 747 (1973)). On the record before us, we are satisfied that the witness was made well aware of the substance of the prior inconsistent statement, as well as when, where, and to whom it was made.

### III

#### Opinion of State's Expert

During its case in chief in the first case, the State called a witness who was qualified as an expert in forensic

chemistry. Over defense counsel's objection, the witness was permitted to testify that only 1.9 percent of the caucasian population has appellant's blood type, and that 98.1 percent has a different blood type. Appellant argues that the expert "possessed no special knowledge concerning population studies and blood grouping. As such, she was not qualified to give an expert opinion in this area."

A *voir dire* examination was conducted of the witness when she first took the stand. At that time, the witness explained that she specialized in the area of serology, meaning that her work entailed examining blood and other body fluids. The witness was then accepted as an expert in forensic chemistry and direct examination began. In response to defense counsel's objection to the testimony of which appellant now complains, the court permitted the State's attorney and defense counsel to conduct further *voir dire* examination of the witness. In answer to the State's attorney's questions, the witness indicated that "any competent serologist" is familiar with "what percentage of people, whether it be males, females, of whatever race, fall within what groups or categories of blood types...." The witness further explained, in response to questioning by defense counsel, that her knowledge in that regard was "[b]ased on observation in the laboratory of samples received and what their types were, as well as ... statistical information that was furnished to us by the FBI, based on sources that they received from the American Association of Blood Banking." The witness acknowledged that she did not know how the American Association of Blood Banking compiled its statistics. Thereafter, the court overruled defense counsel's objection.

In Maryland, an expert opinion is admissible even where the expert relied, in part, on reports of third parties, provided "such reports are relied on by the expert in the practice of his profession." *Consol. Mech. Contractors v. Ball*, 263 Md. 328, 336, 283 A.2d 154 (1971) (where a witness who may have relied upon medical reports, among other things, was permitted to testify about the plaintiff's voca-

tional disability). *See generally* 6 Lynn McLain, *Maryland Evidence* § 703.1 (1987) at 237. Moreover, "a trial judge is given broad discretion in ruling on the admissibility of expert testimony. Seldom will the decision in this regard constitute grounds for reversal." *Simmons v. State,* 313 Md. 33, 43, 542 A.2d 1258 (1988). In the case *sub judice,* the witness indicated that serologists routinely rely on population statistics that are supplied by the FBI and based upon information compiled by the American Association of Blood Banking. She also indicated that her knowledge of population statistics was based, in part, on her own observations in the laboratory. We perceive no abuse, in the trial court's exercise of discretion, in permitting the testimony.

## IV

### Testimony of Defendant's Expert

Four days into the trial in the first case, the defense called an expert witness in DNA testing who had reviewed the results of DNA comparisons compiled at the request of the State. During defense counsel's direct examination of the witness, it became apparent that, in addition to making visual observations of the DNA comparisons, the witness had used a mechanical device known as a "digitizer." Despite a timely discovery request, however, the use of the digitizer and the resulting data had not been reported to the State.

Upon the State's attorney's request, the trial court prohibited the defense from introducing evidence regarding the digitizer. Appellant now contends that the sanction imposed for the discovery violation was excessive. He further complains that, in cross-examining the expert witness, the State's attorney "opened the door" for the barred evidence, but that the court nevertheless refused to allow it.

### (i)

Maryland Rule 4–263(d)(2) provides that,

Upon the request of the State, the defendant shall ... [p]roduce and permit the State to copy all written reports made in connection with the action by each expert whom the defendant expects to call as a witness at the hearing or trial, including the results of any physical or mental examination, scientific test, experiment, or comparison, and furnish the State with the substance of any oral report and conclusion.

Section (i) of the rule provides, in pertinent part:

If at any time during the proceedings the court finds that a party has failed to comply with this Rule or an order issued pursuant to this Rule, the court may order that party to permit the discovery of the matters not previously disclosed, strike the testimony to which the undisclosed matter relates, grant a reasonable continuance, prohibit the party from introducing in evidence the matter not disclosed, grant a mistrial, or enter any other order appropriate under the circumstances.

"The imposition of an exclusionary sanction against the State or the accused under Rule [4–263] is circumscribed only by the principle of abuse of discretion and by constitutional limitations, under all relevant circumstances." *Taliaferro v. State*, 295 Md. 376, 390, 456 A.2d 29, *cert. denied*, 461 U.S. 948, 103 S.Ct. 2114, 77 L.Ed.2d 1307 (1983) (where a trial court properly excluded the testimony of an alibi witness, the existence of whom had not been disclosed to the State prior to the morning of trial).

The expert witness told the court that he used the digitizer merely to confirm the results of his visual examination of the State's DNA comparisons. The witness was permitted to testify that, as a result of his visual examination, he did not believe that the DNA samples found at the crime scene matched appellant's DNA. In declining to grant defense counsel's request for a continuance to allow the State's expert witnesses to review the data from the digitizer, the court found that the digitizer had been used more than a month before the start of trial and indicated that the defense's failure to supply the State with the data was an

obvious violation of Rule 4–263(d)(2). Under the circumstances, the trial court did not abuse its discretion. *Compare Ross v. State*, 78 Md.App. 275, 552 A.2d 1345, *cert. denied*, 316 Md. 365, 558 A.2d 1207 (1989) (a trial court did not abuse its discretion by admitting telephone records offered by the State even though the State failed to provide them to the defense during discovery, where the defense was not surprised by the records and did not dispute their contents).

(ii)

In cross-examining the defense's expert witness, the State's attorney inquired as to the amount of time the witness spent on his visual examination of the DNA comparisons. In an apparent attempt to establish that the person who conducted the original comparison for the State had "a better feel for what is going on in that process than someone reviewing the results at the end," the State's attorney asked if the witness used a "Bioimager" device, as did the person who conducted the original comparison. Thereafter, on redirect examination, defense counsel inquired as to whether, in reviewing the DNA comparisons, the witness "did other things than ... the very simple explanation [as to the visual examination] you've done here today for time constraints." The court sustained the State's attorney's objection to this question and defense counsel neither argued the point nor proffered the information that he sought to elicit.

Appellant now contends that the State's attorney's cross-examination "suggested that [the witness's] conclusion[s] were not credible because he conducted nothing more than a visual observation, [and therefore] opened the door for [a]ppellant, on redirect examination, to remove the unfair prejudice" by revealing the use of the digitizer. The short answer to this argument is that it is not preserved for our review. "[T]he question of whether the exclusion of evidence is erroneous and constitutes prejudicial error is not properly preserved unless there has been a formal proffer

of what the contents and relevance of the excluded testimony would have been." *Mack v. State*, 300 Md. 583, 603, 479 A.2d 1344 (1984).

A proffer is not required if "what the examiner is trying to accomplish [is] obvious." *Jorgensen v. State*, 80 Md.App. 595, 601, 565 A.2d 371 (1989) (quoting *Waldron v. State*, 62 Md.App. 686, 698, 491 A.2d 595, *cert. denied*, 304 Md. 97, 497 A.2d 819 (1985)). Even if we were to assume that it was obvious that defense counsel believed the door had been opened for evidence regarding the digitizer, we would find the argument to be without merit. The State's attorney's inquiry simply did not insinuate that the witness had conducted no more than a visual examination. The record reflects that the State's attorney's questions were designed merely to establish that the witness had not spent a great deal of time reviewing the DNA comparisons and that he did not review the comparisons using the same procedures used by the person who conducted the original comparisons for the State. The trial court properly sustained the State's attorney's objection.

## V

### Rulings on DNA Evidence

Appellant's final argument is two-fold and concerns evidence provided by Cellmark Laboratories, the laboratory that conducted DNA comparisons for the State in both cases. Appellant first contends that the trial court in the first case erred prior to trial by refusing to direct the State to provide the defense with information regarding all of the DNA testing procedures ever employed by Cellmark. Next, appellant contends that the court in the same case erred by permitting a Cellmark employee, who testified as an expert witness, to testify that the DNA samples taken from the crime scene "matched" appellant's DNA.

In his brief, appellant suggests that these arguments are common to both of the cases on appeal. Preliminarily, we observe that they are not. At the trial on the second case,

defense counsel asked the court to adopt by reference a pretrial argument made in the first case concerning the constitutionality of Md.Cts. & Jud.Proc.Code Ann. § 10–915, which pertains to the admissibility of evidence of DNA testing. Counsel did not ask the court to adopt that portion of the pretrial argument pertaining to discovery. Moreover, the agreed statement of facts offered at the second trial indicated that Cellmark had found a match between appellant's DNA and DNA samples found in the victim's home. Defense counsel gave no indication that the agreed statement did not meet with his approval in that regard. In short, the arguments raised on appeal were not raised at the trial on the second case. We therefore shall not consider them in regard to that case. *See* Md.Rule 8–131(a).

(i)

Section 10–915 of the Courts Article was enacted for the purpose of "providing that, in a criminal proceeding, evidence of a [DNA] profile is admissible to prove or disprove the identity of a person." 1989 Laws of Maryland ch. 430. Indeed, in enacting the statute, the Legislature observed that the "[m]eans of identifying th[e] unique DNA structure have been refined far beyond any previous means of human tissue analysis, to a level of scientific accuracy that approaches an infinitesimal margin of error[.]" *Id.* As noted *supra,* the defense moved prior to the trial in the first case to have § 10–915 declared unconstitutional and to compel discovery of all of the testing procedures ever used by Cellmark. Defense counsel reasoned that a comparison of the various procedures would establish that DNA testing is generally unreliable and that the testing performed in the particular case was unreliable. The court denied the motion to declare § 10–915 unconstitutional. As to the motion to compel discovery, the court ordered the State to provide the defense with information concerning the procedures used and data compiled in appellant's particular case.

Appellant has abandoned his constitutional challenge to § 10–915 in this appeal and purports to challenge

only the denial of his motion to compel discovery of all of the DNA testing procedures ever employed by Cellmark. He acknowledges that § 10–915 "was passed in order to eliminate the need for conducting a ... hearing to prove that DNA analysis for identification purposes is generally accepted within the relevant scientific community," but argues that "[i]n order to attack the reliability of Cellmark's procedures [in his particular case,] it was critical that [he] be given access to ... information ... regarding Cellmark's methodology used in *all* cases." (Emphasis added.) In light of appellant's abandonment of his constitutional challenge to § 10–915, this argument is nonsensical. A defendant may attack the reliability of the DNA testing in his particular case but, unless he is challenging the validity of § 10–915 itself, he may not challenge the admissibility of evidence regarding DNA testing in general. *Cf. Kammer v. Young,* 73 Md.App. 565, 571–72, 535 A.2d 936, *appeal dismissed,* 488 U.S. 919, 109 S.Ct. 298, 102 L.Ed.2d 318 (1988) (where this Court explained that, because the Legislature has recognized the reliability of genetic testing, a defendant may attack the weight of evidence regarding such testing but may not attack its admissibility). *See generally* 5 McLain, *supra* § 401.4(c) at 278 ("The only way to contest the validity of the underlying principles involved [in statutorily approved scientific tests] would be to argue that the statutes violate one's right to due process of law"). While a comparison of all of the testing procedures ever used by Cellmark might be relevant to an argument that DNA testing is still being developed and is therefore generally unreliable, there is simply no reason to believe that such a comparison would be relevant to a challenge to the specific testing procedures used in appellant's particular case. The court below ordered the State to provide the defense with all of the procedures used and data compiled in the instant case. Appellant does not contend that the State failed to comply with that order. We are therefore satisfied that the defense had all of the information it

needed to challenge the reliability of the DNA evidence against appellant.

### (ii)

A Cellmark employee who qualified as an expert witness testified about extensive testing she conducted on DNA samples found at the crime scene and samples derived from appellant's blood. Over defense counsel's objections, the witness testified that the samples taken from the crime scene "matched" appellant's DNA, and that it was her opinion that appellant was the source of the samples. Appellant now complains that "no probability calculations were presented" and argues that "without proper evidence regarding the probability of a match, evidence that a match was declared has no relevance. Without probability calculations the fact that there was a match does not tend to make it more or less likely that [a]ppellant was the assailant."

■ The argument has been waived. Although defense counsel timely objected to the testimony of the employee in question, he failed to object later, when a different expert witness from Cellmark expressed the same opinion. The second witness explained that, after reviewing the DNA comparisons, "my opinion is to a reasonable degree of scientific certainty that the DNA that was obtained from the [victim's] nightgown came from Michael Jackson." As the Court of Appeals has explained, "[u]nder Maryland Rule 4–323(a), it is not reversible error when evidence, claimed to be inadmissible, is later admitted without objection." *Tichnell v. State*, 287 Md. 695, 716, 415 A.2d 830 (1980).

■ In any event, we have explained that DNA testing has been legislatively determined to be reliable and is generally admissible in Maryland. The expert witness testified that she used standard procedures and standard equipment in conducting the testing and comparisons. There was simply no need for the State to offer additional evidence, such as probability calculations, to establish that the testing procedures employed were reliable. *See generally* 5

McLain, *supra* § 401.4(d) at 279 ("Once a scientific principle is statutorily approved ..., the results of tests which rely on the principle will be admitted if ...: 1. Any equipment needed for performing the test was in working order; 2. The person operating the equipment or performing the test did so properly; and 3. He or she was qualified to do so") (citing *Fitzwater v. State,* 57 Md.App. 274, 279–80, 469 A.2d 909 (1984) (regarding the admissibility of radar evidence)).

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.